FEDERAL DEPOSIT INS. CORP. OF WASHINGTON, D. C.,
Respondent v. WESTERN SURETY CO., et al, Appellants

(Two cases)

(285 N. W. 909.)

(File Nos. 8190 and 8191. Opinion filed May 24, 1939.)

504

*Tom Kirby,* of Sioux Falls, for Appellants.
*Robert D. Jones,* of Milbank, for Respondent.

SMITH, J.   The receiver of the Farmers & Merchants Bank of Revillo, South Dakota brought separate actions against the Western Surety Company to recover upon contracts insuring the fidelity of its cashier and assistant cashier respectively.   The cases were tried by the court without a jury on stipulated facts, and resulted in a judgment for the receiver in both instances.   Pursuant to the terms of a further stipulation, the cases were considered together on appeal.   For reasons presently to appear, we deal with the cases separately in this opinion.   We first consider the case involving the assistant cashier O. F. Fromke, and for convenience refer to the Western Surety Company as the defendant throughout the rest of this opinion.

From the stipulated facts it appears that after the original bond had been in force for some time, and at a time when the assistant cashier had actually misappropriated $1766.92, the bank applied for a renewal of his bond and for that purpose executed and delivered to the defendant surety company a "Clearance Certificate" in words and figures as follows:

"Bond Number—76814.   Assured—O. F. Fromke

"Obligee or Position—Assistant Cashier.
"Amount—$5,000.   Premium—$133.75.

"To Western Surety Company:

"This is to certify that the books and accounts of the above named employe were examined by us from time to time in the regular course of business and we found them correct in every respect, all monies and property in his control or custody being accounted for with proper securities and funds on hand to balance his accounts, and he is not now in default.

"He has performed his duties in an acceptable and satisfactory manner, and we know of no reason why the guaranty bond should not be continued. His salary is now $110.00 and he is employed as assistant cashier located at Farmers & Merchants Bank at Revillo, South Dakota.

"Farmers & Merchants Bank,

Revillo, S. D.

"Signature of Employer

"By P. C. Lien,

"Official Capacity        Cashier."

Thereafter the defendant delivered to the bank its "Continuation Certificate" as follows:

"Continuation Certificate

"Western Surety Company

"Home Office

"Sioux Falls, South Dakota

"In consideration of the sum of One hundred thirty-three and 75/100 ($133.75) Dollars, and in reliance upon the statements contained in the 'Clearance Certificate' which statements are to be deemed warranties and a part of this contract, the Western Surety Company (hereinafter called the 'company') hereby continues in force bond No. 76814 in the sum of Five Thousand and no/100 ($5,000.00) Dollars, in behalf of O. F. Fromke, assistant cashier, in favor of Farmers & Merchants Bank of Revillo, South Dakota, for the term beginning the 7th day of July, 1933, and ending the 7th day of July, 1934, subject to all the covenants and conditions of said bond, except as herein stated.

"This continuation is executed upon the express condition that the Company's liability under said bond and this and all continuations thereafter shall not be cumulative and shall in no event exceed the sum of Five Thousand and no/100 ($5,000.00) Dollars.

"In witness whereof, the Company has caused this instrument to be signed and its Corporate Seal to be hereto affixed, this 30th day of June, 1933.

"Western Surety Company,

"Dan Kirby,

"President."

According to the stipulated facts, the assistant cashier thereafter, and during the term for which the bond was continued, misappropriated funds of the bank in the additional sum of $9,193.29. The stipulation does not disclose the methods adopted by the assistant cashier in so misappropriating the original sum of $1,766.92, nor does it reveal whether the books and accounts of the assistant cashier were ever in fact examined by the bank. Neither does it indicate whether the bank knew of the prior defalcation at the time it delivered the Clearance Certificate above set forth.

The learned trial court entered conclusions and judgment for the receiver against the defendant for the face of the bond and interest. The defendant contends that the court erred in so doing for the reason that the bond was avoided by the breach of the warranty contained in the certificates heretofore set forth. The receiver, on the other hand, asserts that the stipulated facts disclose nothing more than representations made by the bank in good faith.

Contracts guaranteeing the fidelity of persons holding positions of trust are contracts of insurance, and the principles of the law of insurance must rule the issues presented by this appeal. Lundeen v. Schumacher et al., 52 S. D. 149, 216 N. W. 883; Farmers' & Merchants' State Bank of Verdon v. United States Fidelity & Guaranty Co., 28 S. D. 315, 133 N. W. 247, 36 L. R. A., N. S., 1152. The "Continuation Certificate" having incorporated the "Clearance Certificate" as a part of the contract, the terms of the agreement of the parties during the period of additional coverage are found in the original bond and the certificates so interchanged. Smith v. Federal Surety Company, 60 S. D. 100, 243 N. W. 664. The receiver, having based his action upon the agreement represented by these instruments, must accept its burdens with its benefits. Willoughby v. Fidelity & Deposit Company of Maryland, 16 Okl. 546, 85 P. 713, 7 L. R. A., N. S., 548, 8 Ann.

Cas. 603; Maryland Casualty Company v. First State Bank of Dewar et al., 101 Okl. 71, 223 P. 701; McIntosh v. Dakota Trust Company, 52 N. D. 752, 204 N. W. 818, 40 A. L. R. 1021.

The words of this agreement of the parties leave no room for misunderstanding or construction. The bond was continued "in reliance upon the statements contained in the Clearance Certificate," and those statements "are to be deemed warranties and a part of this contract." Without question, a warranty was intended and the clearly expressed intentions of the parties must govern. Waterbury v. Dakota Fire & Marine Insurance Co., 6 Dak. 468, 43 N. W. 697.

At this point it should be observed that the agreement of the parties does not provide that a violation of the warranted provisions shall avoid the bond. § 1431, Rev. Code of 1919, provides as follows: "A policy may declare that a violation of specified provisions thereof shall avoid it; otherwise the breach of an immaterial provision does not avoid the policy." Since the enactment of this section and other associated sections dealing with warranties (Cf. §§ 1423-1432 inclusive) the breach of an immaterial provision, even though denominated a warranty, does not avoid a contract of insurance unless the policy expressly so declares. As to the breach of a warranty dealing with that which is in fact material, the common law principle obtains, and such a breach avoids the policy even though the policy does not recite that such a breach shall avoid it. Waterbury v. Dakota Fire & Marine Insurance Co., supra; Rumbolz v. American Alliance Insurance Company of New York, 61 S. D. 334, 249 N. W. 316; Wieczorek v. Rochester American Insurance Company, 62 S. D. 216, 252 N. W. 639.

Were the warranted statements material? The answer to the question is found in the statutes. The Clearance Certificate constituted an affirmative representation of existent facts. These representations were warranted. § 1407, Rev. Code of 1919, provides: "The materiality of a representation is determined by the same rule as the materiality of a concealment." § 1391, Rev. Code of 1919 provides, "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed con-

tract, or in making his inquiries." A warranty of a material representation constitutes a material warranty. Waterbury v. Dakota Fire & Marine Insurance Co., supra. When the subject matter of the Clearance Certificate is viewed in the light of this statutory test, its materiality is manifest.

Thus we come to the vital inquiry, viz., do the stipulated facts reveal a breach of that which we have determined to be a material warranty? To answer this inquiry it becomes necessary to examine the language of the warranty in order to determine its exact scope. For convenience we repeat its central provisions. It said: "This is to certify that the books and accounts of the above named employe were examined by us from time to time in the regular course of business and we found them correct in every respect, all monies and property in his control or custody being accounted for with proper securities and funds on hand to balance his accounts, and he is not now in default." The contentions of the appellant are predicated upon the assumption that if the assistant cashier was 'in default" in any respect when the Clearance Certificate was made, the warranty has been breached. We are convinced that the language of the Clearance Certificate will not reasonably bear such a construction. If the defendant sought an unqualified warranty that the officer was not "in default", the remainder of the contents of the Certificate would have been wholly unnecessary. In our judgment, the Certificate conveys but one meaning, namely, that the books and accounts of the officer had been examined from time to time in the regular course of business, and that such examinations disclosed that all monies and property in his control or custody had been accounted for, and that he was not in default. It would be unreasonable to construe this language as a warranty against concealed shortages.

We concur in that which was said by the learned trial court of Tennessee in dealing with this exact language. In the course of its opinion in the case of Hunter et al. v. United States Fidelity & Guaranty Co., 129 Tenn. 572, 167 S. W. 692, 694, it said:

"It is contended in behalf of the guaranty company that the language 'he is not now in default' is to be considered as a substantive representation, independent of the preceding language. It is argued that by these words the employer undertook to state a

detached fact, or exact condition, and did not undertake by this language to state a conclusion drawn from foregoing statements made. As a matter of course, the representation that Ward was not in default was material to the risk, and had it been knowingly made, in another connection, if false, the bond would have been avoided. It is well settled that a bond of this character is to be construed as an insurance contract, and its language, carefully considered and prepared by the company, in all cases of doubt, is to be construed against the company. * * *

"Words and phrases are to be construed according to their context. The whole of the preceding part of this certificate constitutes a mere statement that investigations of Ward's books and accounts have been made and these books and accounts found correct.

"We do not think that a new and distinct warranty can be incorporated into this certificate lawfully by the use of a conjunction and a few words of general import in this sort of connection. Fairly construed, the concluding phrase must be restricted to conform to the dominant meaning of the whole passage. The words 'and he is not now in default,' naturally interpreted, appear only to express the result of the investigations, which the certificate avouches to have been made.

"If the guaranty company had intended to require the bank, as a condition precedent to the renewal of this bond, to warrant that Ward was not in default, good faith would have required a less equivocal method."

In the light of this construction of the Clearance Certificate and the settled principle of law that the defendant must establish a breach of warranty (25 C. J. 1113, § 27), we revert to the stipulation. The defalcation is admitted. To prove a breach of the warranty incorporated into the contract, it was incumbent upon the defendant to show either that ordinary business like examinations were not in fact made as represented, or that examinations so made actually disclosed shortages. No such facts were reflected by the stipulation. Therefore, the defendant has failed to establish its defense of breach of warranty.

A further question remains in connection with the action involving the assistant cashier. In its judgment the court included interest from July 7, 1936. Appellant challenges this portion of the judgment for the reason that the stipulation does not

disclose the date on which demand was made on the defendant surety. This contention is predicated upon the authority of Clark County v. Howard et al., 58 S. D. 457, 237 N. W. 561. The position is well taken. In the absence of a showing of the date of a prior demand, interest should have been allowed from the date of the service of the summons and complaint in the action, namely, October 23, 1937.

We now consider the action involving the cashier. The issue is substantially the same as in the action just considered, except that the misapplications made prior to the execution and delivery of the "Clearance Certificate" all appear on the face of the books of the bank. All of the misapplications of the cashier were effected by overdrafts of his commercial account. This account was overdrawn at the time the Clearance Certificate was executed. Conceding that the bond insured against overdrafts, it follows as a necessary inference from the stipulated facts (Cf. 60 C. J. 85, § 82) that examination of the books was not made, or that the shortage was known at the time the Clearance Certificate was executed and delivered. Nothing appearing in the stipulated facts to excuse or justify continued overdrafts by the cashier, we are of the opinion that the defense of breach of warranty should have prevailed.

A further contention of the receiver-respondent remains to be considered. Predicated upon language contained in § 8957, Rev. Code of 1919 as amended by Chapter 96 of the Session Laws of 1925 (which law was further amended by Chapter 58, Laws of 1939, reads as follows: "Each officer having access to or care of the funds and assets of the bank must furnish a surety company bond in an amount not less than 20 per cent of the capital stock of the bank; provided that in not case shall the bond for any such officer be less than $5000.00. All employees having access to or care of the funds and assets of the bank must furnish a surety company bond in an amount not less than Five Thousand ($5,000.00) Dollars, each of which bonds must have the approval of the superintendent of banks before it can be accepted; and when the same shall have been accepted by the board of directors of the bank or trust company, it shall be filed with the superintendent of banks. No bond having been so approved and accepted may be altered, canceled or terminated, by any one, until

after thirty days written notice of the intention to alter, cancel or terminate such bond shall have been served upon the superintendent of banks," and upon the alleged terms of the original bond, the receiver contends that there was no occasion for the Clearance Certificate or the Certificate of Continuation for the reason that the original bond was a continuing bond which had not been terminated by statutory notice to the superintendent of banks. It is further said by the receiver that the original bond contained no such warranty as we have heretofore considered. Insofar as this contention is based upon the law it must fail, because we find nothing in the cited statute which forbids the filing of a fidelity contract for a fixed term as distinguished from a continuing term. Insofar as the contention is based upon facts, it must fail because the case was presented to the lower court and comes to this court on stipulated facts. The original bond was not before the court. Some of its provisions were stipulated, but the stipulation does not disclose the term for which it was to run. On the other hand, it was stipulated "that thereafter the Farmers & Merchants Bank * * * did apply to the Western Surety Company for a renewal of the bond." We must confine ourselves to the facts stipulated by the parties.

The judgment of the trial court in No. 8190 involving the assistant cashier O. F. Fromke, is modified so as to provide interest from the 23d day of October, A. D. 1937, and the judgment of the trial court in No. 8191 involving the cashier, P. C. Lien, is reversed. No costs will be allowed in No. 8190. Costs, including an allowance for printing appellant's abstract and brief, will be allowed in No. 8191.

POLLEY, ROBERTS, and RUDLOP, JJ., concur.

WARREN, P. J., absent and not sitting.