**RESOLUTION TRUST CORPORATION, successor to claims of First Federal Bank, F.S.B., Appellee,**

**v.**

**HARTFORD ACCIDENT & INDEMNITY CO., Appellant.**

Nos. 93–1137, 93–1515.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1993.

Decided May 31, 1994.

Roderick D. Blanchard, Minneapolis, MN, argued (Carl D. Knudson and Thomas H. Crouch, on the brief), for appellant.

Edward Michael Laine, St. Paul, MN, argued (Nancy L. Cameron, on the brief), for appellee.

Before FAGG, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

ROSS, Senior Circuit Judge:

■ First Federal Bank obtained a Standard Savings and Loan Blanket Bond from appellee Hartford Accident and Indemnity (Hartford) to protect First Federal and its depositors from a variety of losses. This policy provided broad coverage for losses arising out of dishonest, criminal or malicious acts, including, among other things, employee infidelity.

In 1987, First Federal established a mortgage banking company known as FF Mortgage, and conducted business under the name Midland Mortgage Company (Midland). First Federal owned 86% of the stock, while John Gaustad, Midland's president, owned the remaining 14%. First Federal was to provide the funds to Gaustad to enable him to make mortgage loans through Midland to be held by First Federal. Starting in January 1987, Gaustad, acting through Midland, solicited mortgage business which was funded entirely by First Federal. All mortgages were assigned to First Federal after closing.

Simultaneously with Midland's establishment, Hartford added Midland as a "Joint Insured" under First Federal's bond. On June 1, 1988, Gaustad purchased all of First Federal's stock in Midland and became its sole owner. The business relationship continued as before, however, where First Federal provided the sole source of funding for Midland's loans and received immediate assignment of all mortgages.

In October and November 1988, Paul Mavity, the president of First Federal, suspected that Gaustad may have committed some dishonest acts. Gaustad allegedly used First Federal's money to create fictitious loans and diverted funds owed First Federal from legitimate investors. After First Federal notified Hartford of a potential loss, Hartford purported to cancel coverage as to Midland, retroactive to June 1, 1988.

On November 15, 1990, First Federal brought this breach of contract action. On

March 8, 1991, First Federal failed and the Resolution Trust Corporation (RTC) succeeded to First Federal's interest in this lawsuit.

Relying on a provision in the blanket bond, Hartford asserted that the action was barred because it was not commenced within 24 months of discovery of the loss. The district court concluded that the bond's contractual limitations period for bringing suit was void under S.D.L.C. § 53–9–6 and ultimately awarded judgment in favor of RTC in the amount of $705,181.34, prejudgment interest in the amount of $307,883.39, and attorneys fees in the amount of $174,173.12. We disagree with the district court's interpretation of South Dakota law as it relates to the relevant bond provisions in the instant case, and accordingly reverse.

The blanket bond requires the insured to bring an action on the bond no later than 24 months after discovery of the loss. The bond provides that "[t]he failure to file suit within two years after discovery of loss bars recovery on the Bond." Here, the loss was discovered on or about October 27, 1988, and suit was not commenced until November 15, 1990. Hartford now contends that by virtue of this bond provision, RTC's failure to commence the action within 24 months of discovery of the loss bars this action.

The district court held that the contractual limitation period was void by virtue of S.D.C.L. § 53–9–6, which voids any provision in a contract that restricts the time in which an action on the contract may be brought. However, the statute also allows an exception to the prohibition of contractual limitation periods for those contracts defined as "surety contracts." Specifically, section 53–9–6 provides "any provision in a surety contract which limits the time for enforcement is valid and enforceable if the limitation of time is not less than two years after the cause of action has accrued." S.D.C.L. § 53–9–6.

Hartford contends that fidelity insurance contracts, such as that at issue here, is defined under South Dakota law as a surety contract and, therefore, the bond's two-year limitation provision is valid and serves to bar the RTC's claim. *See* S.D.C.L. § 58–9–29.

Section 58–9–29 of the South Dakota statute provides:

**Surety insurance including fidelity insurance.** "Surety insurance" includes fidelity insurance, insurance to guarantee the fidelity of persons holding positions of public or private trust.

Based on our reading of the plain language of section 58–9–29, and our inability to find anything in the statute or its legislative history that would limit application of this section only to this Title, we conclude that fidelity insurance, such as that at issue in the instant case, was intended to fall within the definition of surety insurance. Therefore, we conclude that the two-year limitation period contained in the bond is valid and serves to defeat the RTC's claim.

We are not persuaded by the cases relied upon by the RTC which have held that a fidelity bond or insurance is not a surety contract. Because these cases predate the enactment of section 58–9–29, which specifically classifies fidelity insurance as surety insurance, they are not instructive in the present analysis. *See, e.g., Dawson v. Fidelity & Deposit Co.*, 189 F.Supp. 854, 865 (D.S.D.1961); *Lundeen v. Schumacher*, 52 S.D. 149, 216 N.W. 883, 884 (1927); *FDIC v. Western Surety Co.*, 66 S.D. 503, 285 N.W. 909, 911 (1939).

Based on the foregoing, the judgment of the district court is reversed and the case is remanded for further consideration consistent with this opinion. Based on our conclusion that the cause of action is barred by the bond's two-year limitation provision, there is no need to reach other arguments raised by the parties.[1]

---

1. Appellee has filed a submission pursuant to Rule 28(j), Federal Rules of Appellate Procedure, citing 12 U.S.C. § 1821(d)(14) as authority applicable to this case. Section 1821(d)(14) provides as follows:

    **Statute of limitations for actions brought by conservator or receiver**

    **(A) In general**
    Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—
    (i) in the case of any contract claim, the longer of—

MORRIS SHEPPARD ARNOLD, Circuit Judge, concurring in the judgment.

I am not confident that the statute on which the court relies, S.D.C.L. § 58–9–29, has any application to this case. It seems fair to conclude that that statute was intended to provide a general definition of surety insurance for purposes of the insurance code of South Dakota and, perhaps, other statutory provisions that were in existence at the time of the statute's passage. It seems to me a mistake to use S.D.C.L. § 58–9–29 to interpret a phrase (which, in fact, is not identical to the one that it contains) that appears in another statute subsequently passed in response to a case decided by the South Dakota Supreme Court. *See Sheehan v. Morris Irrigation, Inc.,* 410 N.W.2d 569 (S.D.1987). I believe that it makes a lot more sense to look to that case to decide the meaning of "surety contract" in S.D.C.L. § 53–9–6, since it was that case that created the mischief that the South Dakota Legislature wanted to undo.

The contract in *Sheehan* was a bond executed to secure the performance of a construction contract. The relevant portion of the policy sued on in this action, namely that part that insures against employee infidelity, is likewise intended to secure the performance of a contract. It appears, therefore, that the arrangement between the parties in this case falls within the statutory exception created in reaction to *Sheehan* and that the action is therefore barred.

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under State law; and

(ii) in the case of any tort claim (other than a claim which is subject to section 1441a(b)(14) of this title), the longer of—

(I) the 3–year period beginning on the date the claim accrues; or

(II) the period applicable under State law.

**(B) Determination of the date on which a claim accrues**

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

We decline to consider this additional citation for two reasons. First, this issue could have been raised in the district court but was not. This court will ordinarily not consider a new issue never considered or raised in the court below.

Second, section 1821(d)(14) sets forth time limitations on actions *brought* by the RTC. This action was not *brought* by the RTC, but by First Federal, and the applicable two-year limitation period expired before the action was commenced by First Federal.