_____

No. 95-3298

_____

Federal Deposit Insurance          *
Corporation, successor to          *
claims of First Federal Bank,      *
F.S.B.,                            *
                                   *
          Appellee,                *
                                   *
     v.                            *   Appeal from the United States
                                   *   District Court for the District
Hartford Accident and Indemnity    *   of South Dakota.
Company,                           *
                                   *
          Appellant.               *


_____

          Submitted:  June 13, 1996

              Filed:  October 16, 1996
          _____

Before HANSEN, ROSS and JOHN R. GIBSON, Circuit Judges.

          _____

ROSS, Circuit Judge.


     This case is before us for the second time following our earlier
remand to the district court based on our conclusion that a blanket bond's
two-year contractual limitations period is valid under South Dakota law.
See RTC v. Hartford Acc. & Indem. Co., 25 F.3d 657, 659 (8th Cir. 1994).
We briefly reiterate the facts for the purposes of our analysis in the
present appeal.


     Hartford Accident and Indemnity Company (Hartford) issued a standard
savings and loan blanket bond (bond) for the now-defunct First Federal Bank
(First Federal).  The bond provided broad coverage for losses arising out
of dishonest, criminal or malicious

acts, including employee infidelity.  The bond further provided that any action on the bond must be brought no later than twenty-four months after discovery of the loss.

In 1987, First Federal established a mortgage banking company which conducted business under the name Midland Mortgage Company.  First Federal owned 86% of the stock, while John Gaustad, Midland's president, owned the remaining 14%.[1]  In late 1988, it was discovered that Gaustad had engaged in fraudulent activities involving fictitious loans funded by First Federal.  First Federal notified Hartford of the claim under the bond and Hartford refused to pay.  The proof of loss was submitted to Hartford on December 20, 1988.  On March 7, 1990, fifteen months following the submission of the proof of loss, Hartford denied coverage.  The suit was filed on November 15, 1990, eight months after denial of coverage and almost twenty-five months after discovery of the loss.

The district court initially entered summary judgment in favor of FDIC[2], concluding that the two-year contractual limitations period in the bond was void under South Dakota law.  See S.D.C.L. § 53-9-6.  A panel of this court reversed, holding instead that, because it was contained in a surety contract, the two-year contractual limitations provision was valid under South Dakota law.  See S.D.C.L. §§ 53-9-6, 58-9-29.  The case was remanded to the district court with instructions to consider the issues relating to the date of discovery, estoppel, and any other issues remaining in the case.

On remand, the FDIC argued that the statute of limitations did

---

[1]On June 1, 1988, Gaustad purchased all of First Federal's stock in Midland Mortgage Company and became its sole owner.

[2]On March 8, 1991, First Federal failed and the Resolution Trust Corporation (RTC) succeeded to First Federal's interest in this lawsuit.  Subsequently, the FDIC was statutorily substituted for the RTC as appellee.

not begin to run until March 7, 1990, when coverage was formally denied, or, alternatively, that the twenty-four month limitation period should not commence until after the expiration of sixty days following the submission of a proof of loss, or February 20, 1989.  Under either scenario, FDIC's suit filed on November 15, 1990, would be timely.

The district court presumed the contractual period of limitations began to run on October 27, 1988, when First Federal's president, Paul Mavity, stated he discovered Gaustad had committed fraudulent acts.  Mavity testified that on October 27, 1988, he "discovered that there were frauds, fraudulent acts being committed."  Nevertheless, the court ruled that the limitations period was tolled during the fifteen months that Hartford investigated the loss, and in the alternative that Hartford waived the two-year deadline.  Accordingly, the district court once again entered summary judgment in favor of the FDIC.

Hartford's bond uses the surety industry's standard twenty-four month contractual limitation, which requires that suit be brought within two years of the discovery of the loss.  The bond further provides that Hartford is immune from suit for sixty days following the submission by the policyholder of proof of loss:

> (d) Legal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss. . ..

The bond also describes when discovery of loss occurs:

> Discovery occurs when the Insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred, even though the exact amount or details of loss may not then be known.

Mavity's uncontroverted statement, that on October 27, 1988, he became aware of Gaustad's fraudulent acts, constitutes discovery of loss under the clear terms of the insurance policy as a matter of law.

Hartford's bond specifically required First Federal to commence action no later than "the expiration of 24 months from the discovery of such loss." The language is plain and unambiguous. Nevertheless, the district court adopted a new legal theory of "tolling," where the cause of action accrues on the date of discovery, in accordance with the plain language of the contract, but runs only until proof of loss is submitted. At that point, according to this theory, the limitations period is tolled during the time the insurer investigates the claim and the period begins to run again after the insurer denies the claim.

The district court reasoned that literally enforcing the twenty-four month limitations period as written, would "produce unjust results and is contrary to the policyholder's rights under the bond." The court noted that "[d]espite the twenty-four month limitations period, the plaintiff in fact had only eight months in which to bring an action. Add to this the two months of immunity provided by the bond and it is clear that the policyholder's time for bringing suit was severely reduced." The court concluded that adoption of the tolling theory "is clearly the most fair to both parties."

We disagree with the court's conclusion. The district court disregarded existing South Dakota law and instead followed a minority of courts that have used the concept of tolling to enlarge a contractual time limitations. See, e.g., Peloso v. Hartford Fire Ins. Co., 267 A.2d 498, 501 (N.J. 1970); Prudential-LMI Comm. Ins. Co. v. Superior Court, 798 P.2d 1230, 1232 (Cal. 1990); Ford Motor Co. v. Lumbermens Mut. Cas. Co., 319 N.W.2d 320, 323-25 (Mich.

1982).  The minority rule is premised on a perceived incongruity in insurance contracts that have time limitations.  The perception of the incongruity stems from the fact that the insurance policy requires suit to be commenced within one or two years, but does not account for the delays either required by the policy or inherent in the claims process.  These courts purport to reconcile this by "allow[ing] the period of limitation to run from the date of the casualty but to toll it from the time an insured gives notice until liability is formally declined."  Peloso, 267 A.2d at 501.  Hartford claims the minority rule wrongly makes the two-year limitation a grant of two, unfettered years to the insured in which to decide whether to sue.  Hartford argues the limitations period is not a grant of time, but instead is a deadline for filing suit.

The majority of courts have refused to toll a limitation provision during the initial non-suit period or during the insurer's investigation.  See, e.g., Ashland Fin. Co. v. Hartford Acc. & Ind. Co., 474 S.W.2d 364, 366 (Kent. Ct. App. 1971); Closser v. Penn. Mut. Fire Ins. Co., 457 A.2d 1081, 1085-86 (Del. 1983) (refusing to toll a limitations provision where insured was not prevented from complying with the provision); Suntrust Mtg., Inc. v. Georgia Farm Bureau Mut. Ins. Co., 416 S.E.2d 322, 323-24 (Ga. Ct. App. 1992) (refusing to toll the limitations period during the 60-day nonsuit period); Kelley v. Travelers Ins. Co., 458 N.E.2d 406, 407 (Ohio Ct. App. 1983) (rejecting tolling argument); Brunner v. United Fire & Cas. Co., 338 N.W.2d 151, 152 (Iowa 1983) (rejecting Peloso).

On March 7, 1990, when Hartford completed its investigation and denied coverage, First Federal still had more than seven months in which to commence suit.  Instead of filing its action, however, First Federal waited more than five months before objecting to Hartford's denial of coverage on August 13, 1990.  On September 16, 1990, Hartford answered First Federal and reiterated its denial of coverage.  Even then, First Federal still had six weeks in which to

file suit.  See <u>Minnesota Mut. Fire & Cas. Co. v. North Lakes Constr.,</u> <u>Inc.</u>, 400 N.W.2d 367, 370 (Minn. Ct. App. 1987) (holding that insured's failure to commence suit within two-year limitations period precluded recovery where insured had three months to commence suit after insurer denied coverage); <u>Martin v. Liberty Mut. Fire Ins. Co.</u>, 293 N.W.2d 168, 172 (Wis. 1980) (applying time limitation where insured had one month left on limitations period after insurer denied coverage).  <u>See</u> <u>also</u> <u>Koclanakis v.</u> <u>Merrimack Mut. Fire Ins. Co.</u>, 899 F.2d 673, 676-77 (7th Cir. 1990) (insured "does not explain why he could not have prepared a lawsuit in a six-week period, especially when he already knew all of the pertinent facts").

We conclude the district court erred in applying a tolling theory to this contract.  The bond unambiguously provided that any suit must be filed within twenty-four months of the date of discovery of the loss.  No showing has been made that the contract was inherently unfair to the insured or that compliance with the time requirements in fact delayed the filing of suit beyond the limitations period.  The FDIC has never claimed that First Federal could not have filed suit or was prevented from filing suit within the two-year period.  <u>See</u> <u>Closser</u>, 457 A.2d at 1085 (refusing to toll time limitation where insured was not prevented from complying with deadline).  If conduct or inaction on the part of the insurer is responsible for the insured's failure to comply with time limitations, injustice is avoided and adequate relief assured, without doing violence to the plain language of the insurance contract, by resort to traditional principles of waiver and estoppel.

Because South Dakota law already protects an insured who has been mislead or otherwise induced into missing a filing deadline, we decline to rewrite the policy's limitations provision to read other than its clear and unambiguous terms provide, namely that suit may not be brought "after the expiration of 24 months from the

discovery of such loss." See Johnson v. Johnson, 291 N.W.2d 776, 778 (S.D. 1980) (holding that contracts are to be interpreted as written, and the interpretation of the terms of a contract may not result in a modification of the contract). A court must not impose its own concept of fairness under the guise of construing a contract. Where the parties make by agreement a fixed, unqualified limitation that no suit or action on the policy shall be sustainable unless commenced within twenty-four months after discovery of the loss, the parties are bound to their contract as written.

We also reject the district court's conclusion that Hartford waived its right to rely on the bond's contractual limitations provision. The district court's holding was based on its finding that Hartford "sat on the claim for sixteen [sic] months before issuing its denial," and that Hartford did not indicate during its investigation that the limitations period was running and when the period would expire, although the court acknowledged that Hartford was "not required [to do so] under the bond." The court concluded that, because of the totality of Hartford's conduct, it would be unjust and inequitable for Hartford to rely on the limitations defense.

Although it appears the district court may have confused or combined the doctrines of equitable estoppel and waiver, the FDIC is not entitled to relief under either theory.[3] First and foremost, the facts unequivocally establish that Hartford's denial of coverage occurred seven months prior to the expiration of the

---

[3]A substantial difference exists between the doctrines of waiver and equitable estoppel. Western Cas. & Sur. Co. v. American Nat'l Fire Ins. Co., 318 N.W.2d 126, 128 (S.D. 1982). Waiver is the intentional relinquishment of a known right, Subsurfco, Inc. v. B-Y Water Dist., 337 N.W.2d 448, 456 (S.D. 1983), while estoppel requires an inducement upon which the other party reasonably relies to its detriment. Cromwell v. Hosbrook, 134 N.W.2d 777, 780-81 (S.D. 1965).

limitations period and the final correspondence from Hartford, again denying the claim, came at least six weeks prior to the expiration of the limitations period. As previously stated, no evidence has been submitted that the insured was prevented from complying with the filing deadline. There is no evidence that Hartford "lull[ed] the insured into inaction by promises of, or negotiations for, payment under a claim, or [by failing] to deny liability until after a contractual limitations period has expired." See Federal Sav. & Loan Ins. Corp. v. Aetna Cas. & Sur. Co., 701 F. Supp. 1357, 1361 (E.D. Tenn. 1988). Hartford's statements in its notices of denial that it would consider additional information if First Federal believed that any facts were misstated or omitted from Hartford's analysis were not attempts to mislead First Federal to believe payment was likely, or that it intended to enlarge the limitations period in the contract. Instead these comments were simply good faith expressions of a willingness to consider corrected information if necessary. See Roberson v. Metropolitan Life Ins. Co., 682 F. Supp 907, 910 (E.D. Mich. 1988) (holding that insurer's good faith statement that plaintiff's claim would be fairly apprised if additional evidence was submitted did not estop insurer from asserting limitations defense).

The district court disregarded S.D.C.L. § 58-12-2, which provides that "[i]nvestigating any loss or claim under any policy" shall not "constitute a waiver of any provision of a policy or of any defense of the insurer." While the statute clearly does not insulate an insurer from a claim of waiver regardless of the manner of its investigation, it does codify the sound policy that as a general rule an insurer's investigation of a claim will not constitute a waiver of an insurer's rights under the policy.

In summary we conclude the district court erred in disregarding the clear terms of the contract between the parties and further erred in concluding that Hartford waived its

limitations defense.  The FDIC's suit is barred by the twenty-four month limitations provision of the bond.  The judgment of the district court is reversed and the district court is instructed to enter judgment in favor of Hartford.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.