## A98A2120. STAPLETON v. GENERAL ACCIDENT INSURANCE COMPANY.
### (512 SE2d 645)

POPE, Presiding Judge.

Pam Stapleton d/b/a Stapleton's Bed & Breakfast (Stapleton) appeals the trial court's order granting third-party defendant General Accident Insurance Company's (GAIC) motion for summary judgment. This lawsuit was initiated by Restoration Company when it filed suit against Stapleton for money owing on a contract for repairs to her flood-damaged inn. Stapleton answered and filed a third-party complaint against her insurer, GAIC, contending it owed her insurance proceeds for the repairs. However, the trial court found that Stapleton's suit against GAIC was barred because it was filed outside the policy's two-year suit limitation period. Stapleton contends the court erred because a factual dispute remains as to whether GAIC waived the limitation period by its conduct. We affirm.

"This Court applies a de novo standard of review to a grant of summary judgment, and the evidence must be viewed in the light most favorable to the nonmoving party. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." *Griffin v. Travelers Ins. Co.*, 230 Ga. App. 665 (497 SE2d 257) (1998). Viewed in this light, the record shows that Stapleton's policy provided that any legal action against GAIC must be brought "within 2 years after the date on which the direct physical loss or damage occurred." Stapleton's inn was damaged on July 5, 1994, during a flood. On April 3, 1997, thirty-three months after the date of loss and nine months after the suit deadline, Stapleton filed her complaint against GAIC.

Stapleton does not challenge the validity of the policy's suit limi-

tation period, which, under Georgia law, is a binding condition precedent to her recovery. See, e.g., *Appleby v. Merastar Ins. Co.*, 223 Ga. App. 463 (477 SE2d 887) (1996). Rather, she argues GAIC waived her compliance with the provision by its conduct.

> [A]n insurer can be held to have waived a limitation period when its investigations, negotiations, or assurances up to and past the period of limitation led the insured to believe the limitation would not apply. Because OCGA § 33-24-40 permits an insurer to investigate claims without waiving such limitation, not all conduct by the insurer will lead to waiver. It is only where the insurer's conduct reasonably leads the insured to believe that a strict compliance with the limitation provision would not be insisted upon. Where there is evidence of such conduct, the issue of waiver is a question of fact for a jury to decide.

(Citations and punctuation omitted.) Id. at 464. On the issue of waiver, the record reveals the following:

Stapleton immediately notified GAIC of the loss. After receiving notice of the loss, GAIC retained an independent adjuster to handle Stapleton's claim. Within a week of the loss, the adjuster inspected the damaged premises, took photographs of the damaged structure and contents, and met with Restoration Company to coordinate repairs. The adjuster noticed a few small oriental rugs that had been damaged by water.

On August 29, 1994, the adjuster sent Stapleton a letter containing a $3,000 check in "advance against your personal contents claim." The adjuster advised Stapleton that when she provided a documented, formal claim for her damaged or destroyed business property, further advances would be issued. The letter also noted that checks had been sent to pay for structural repairs. GAIC's claims manager stated that a total of $62,602.51 was paid to cover Stapleton's documented structural damages. The manager explained that the personal property or "contents" claim was not paid because Stapleton failed to document her extensive list of items.

On September 13, 1994, the adjuster sent Stapleton a proof of loss form. He informed Stapleton that GAIC would not make any further advances "on business personal property until the content claim worksheets are received." He explained that only when "this documentation is received by our office, we will quantify your loss and submit for General Accident's review." Stapleton lost the proof of loss form, and the adjuster sent her a second one with his letter of October 24, 1994. The adjuster advised Stapleton then that the information he had received on her contents claim, especially as it pertained

to damaged oriental rugs, was "very incomplete." The adjuster specifically requested information proving the ownership, value, and extent of damage to the rugs.

On November 16, 1994, Stapleton submitted a sworn proof of loss claiming almost $196,000 in contents damages, of which $47,125 was for damage to 24 oriental rugs. On December 7, 1994, the adjuster informed Stapleton that the proof of loss was incomplete and he would need further information in order for payments to be made. The adjuster advised Stapleton that because he had not seen the rugs during his inspection, GAIC needed something to document her ownership of the rugs and an estimate of their value. GAIC required the same information for the rest of the items on her worksheet, including clothing, freezer and pantry items, oriental lamps, furniture, and stereo equipment. He stated: "General Accident has informed us that it is up to you to prove [your] contents claim." The adjuster also disputed several of the items claimed, asserting they either were not damaged in the flood or were not covered under the policy.

On December 16, 1994, the GAIC claims manager wrote Stapleton, advising her that because the proof of loss was incomplete, GAIC "cannot complete the handling of your claim." The adjuster wrote Stapleton on February 14, 1995, and again on April 26, 1995, requesting additional information and attempting to schedule a meeting. In the April 26, 1995 letter, the adjuster noted that Stapleton had canceled their previously scheduled meeting. He urged her to meet with him "face to face to settle your claim and answer any questions you may have about [the] requested documentation." GAIC did not hear from Stapleton again until her lawyer contacted its claims manager by phone on June 6, 1995.

On June 8, 1995, Stapleton's attorney wrote GAIC, promising that he would comply "with any requirements for properly perfecting any proof of claim under the policy which has not been properly submitted." Also on June 8, 1995, the adjuster sent Stapleton's attorney copies of the information and correspondence previously submitted by Stapleton.

On December 26, 1995, the adjuster wrote Stapleton's attorney, stating that he had not received any further information or correspondence from them since June. Again, on January 17, 1996, the adjuster wrote Stapleton's attorney stating that he hoped to "discuss the necessary documentation to bring this matter to a close." However, no claim documentation was forthcoming. On July 4, 1996, GAIC's suit limitation period expired; consequently, it closed its file on Stapleton's claim on July 12, 1996. Shortly thereafter, Stapleton made a complaint to the Insurance Commissioner about GAIC's handling of her claim. The commissioner investigated the complaint and responded, explaining that GAIC needed documentation to process

the claim. The commissioner wrote: "I hoped [your attorney] might be able to assist you in successfully gathering then submitting documentation to the insurance company. I know that he made [an] effort to do so earlier in the year."

In her deposition, Stapleton admitted that neither GAIC nor the adjuster told her not to file suit. In fact, it appears that the prospect of a lawsuit was never discussed. Stapleton testified that she could not recall whether GAIC specifically told her they were going to pay but it was her understanding that GAIC would settle with her because the adjuster always maintained that her claim "was being negotiated and that they kept wanting me to do different things and change different documents. . . ." She explained "it was just a matter of redoing a schedule of contents or whatnot. . . ." In an affidavit she filed in response to GAIC's motion for summary judgment, Stapleton stated she did not file suit because the adjuster assured her that GAIC would pay all of her claim.

Given this evidence, we cannot agree with Stapleton that an issue of fact remains on whether GAIC waived its two-year contractual limitation period. The evidence shows only that GAIC continued to negotiate with Stapleton, waiting for documentation supporting her contents claim. "[M]erely negotiating for a possible settlement of a disputed claim which is unsuccessfully accomplished is not conduct designed to lull the claimant into a false sense of security and does not preclude an assertion of the contractual" suit limitation period. *Cambridge Mut. Fire Ins. Co. v. Okonkwo*, 218 Ga. App. 59, 61 (2) (460 SE2d 302) (1995). Rather,

> [t]o conclude that the policy limitations have been waived or estopped, there must be an affirmative promise or other act waiving the limitation[,] or an actual or constructive fraud leading the insured to believe the limitation [period] would be enlarged, or lulling him into the security of actually thinking [that] the claim would in fact be paid without suit.

*Bowers v. Safeco Ins. Co. of America*, 187 Ga. App. 229, 230 (1) (369 SE2d 547) (1988). In this case, the only evidence of such a promise on GAIC's part is Stapleton's affidavit testimony that she did not file suit because the adjuster assured her that her claim would be paid. However, because that statement is directly contradicted by her previous deposition testimony, we construe it against her. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986) (unexplained inconsistencies in testimony must be construed against an equivocator). Finding no dispute of fact on the issue of waiver, we conclude that summary judgment to GAIC was proper.

*Judgment affirmed. Beasley, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 8, 1999 —
RECONSIDERATION DENIED MARCH 10, 1999 —

*Vansant, Corriere, McClure & Dasher, Alfred N. Corriere, Michael W. Strahan*, for appellant.
*Swift, Currie, McGhee & Hiers, Joan P. Shaker, Mark T. Dietrichs*, for appellee.