A09A0144. ENCOMPASS INSURANCE COMPANY OF AMERICA
v. FRIEDMAN.
(682 SE2d 694)

BERNES, Judge.

At issue in this case is whether appellee Encompass Insurance Company of America is required to pay for damage to appellant Toby Friedman's home caused by water damage and mold that infested the air ducts and walls as a result of moisture from condensation amassing on her air conditioning system. We granted Encompass's application for interlocutory appeal in order to consider whether the trial court erred in denying Encompass's motion for summary judgment. Concluding that Friedman's claim is time barred by the contractual limitation provision, we reverse.

The record viewed in the light most favorable to Friedman shows that in 1993, Friedman purchased a homeowner's insurance policy from Encompass (the "Policy"), which she renewed annually. The Policy was an all-risk policy, meaning that all damage that was not expressly excluded from the policy was covered under the Policy.

In September 2005, Friedman noticed that the den in her ceiling had gray discoloration around the light registers, which she removed with bleach. When the discoloration persisted, Friedman contacted Comfort Air Heating & Air Conditioning to evaluate the problem. A representative from Comfort Air examined Friedman's home on September 2 and again on September 6, 2005 and, on a receipt signed as received by Friedman, noted "condensation on insulation causing ceiling damage" and recommended "replacement of all duct work because of . . . condensation thru-out duct work."[1]

Friedman contacted Byrd's Heating and Air, Inc. for a second opinion. In October 2005, a representative from Byrd informed Friedman that she might have a mold contamination problem and instructed her to contact a mold expert. On October 21, 2005, a representative from Professional Mold Service confirmed that Fried-

---

[1] Friedman argues that this receipt constitutes inadmissible hearsay. We do not agree. The issue in this case and the limited purpose for which we are considering the document is to prove that Friedman had notice of the purported water damage, not to establish that the representative was truthful in his report. See *Salinas v. Skelton*, 249 Ga. App. 217, 221 (1) (547 SE2d 289) (2001); *Quiktrip Corp. v. Childs*, 220 Ga. App. 463, 466 (3) (469 SE2d 763) (1996); *MARTA v. Allen*, 188 Ga. App. 902, 905 (2) (374 SE2d 761) (1988). Accordingly, the receipt is not hearsay.

man's home had been contaminated by mold growth and recommended that she move out of the house. The representative further concluded that the mold growth was caused by water condensate dripping from the air conditioning system duct work and from the lighting fixtures.

Friedman called and reported the claim to Encompass the following day. Encompass sent an engineer to inspect Friedman's home. The engineer reported the presence of condensate which had formed on the HVAC duct work and dripped onto the home's ceiling. He further opined that the condensation was the most likely cause of the fungal growth, and that the condensation itself was caused by "an imbalance of chilled air supplied to the registers and leakage of the ducts" due to the HVAC system not functioning properly.

Based upon this report, Encompass determined that the mold resulted from a defectively designed HVAC system and that coverage was excluded under the following Policy exclusion:

> We do not insure for loss . . . [t]o covered real property caused by the following. However, any ensuing loss not excluded or excepted in this policy is covered. . . .
> (3) Faulty, inadequate or defective . . . [d]esign, specifications, workmanship, repair, construction, . . . [or] [m]aintenance . . . of part or all of any property whether on or off your residence premises.

(Emphasis omitted.) When Friedman contested its position, Encompass sent an engineer from SEA Ltd. to inspect her home. The engineer agreed that the source of the moisture was coming from the HVAC system and opined that it resulted from improper design, installation, and maintenance of the HVAC system. Encompass maintained that the damage was not covered under the Policy.

Friedman in turn hired her own expert. Although her expert agreed that excessive moisture dripping from the HVAC system was the source of the mold, he disagreed with the contention that the HVAC system was defectively designed or installed; rather, he opined that the condensation resulted from improper maintenance of the HVAC system.

Encompass continued to deny coverage. On September 15, 2006, Friedman filed the present lawsuit for breach of contract, bad faith, and bad faith attorney fees. Her complaint alleged that in September 2005, she contacted Comfort Air after discovering "water spots" on the ceiling of her home. She further asserted that, regardless of whether the moisture was caused by a defectively designed or improperly maintained HVAC system, the water damage and resulting mold in the air ducts and walls were ensuing losses otherwise

covered under the Policy.[2]

Encompass moved for summary judgment, arguing both that Friedman's lawsuit was untimely under the limitation period contained within the Policy and that the damage to her home otherwise fell within the Policy exclusions. The trial court denied summary judgment, and this Court granted Encompass's application for interlocutory appeal.

1. Encompass contends that the trial court erred in denying its motion for summary judgment on the ground that Friedman's lawsuit was not filed within the contractually demanded period of one year from the date of loss. We agree.

The Policy included the following language: "No action [against Encompass] can be brought unless the policy provisions have been complied with and the action is started . . . [w]ithin one year after the date of loss." Georgia law is clear that contractual limitations like the one presented here are valid and will be enforced by the courts. *Desai v. Safeco Ins. Co. of America*, 173 Ga. App. 815, 816 (328 SE2d 376) (1985); *Herring v. Middle Ga. Mut. Ins. Co.*, 149 Ga. App. 585, 587 (254 SE2d 904) (1979). Absent special circumstances such as waiver, estoppel or impossibility, compliance with a suit limitation is generally a condition precedent to an insured's recovery. See *Stapleton v. Gen. Accident Ins. Co.*, 236 Ga. App. 835, 836 (512 SE2d 645) (1999); *Livaditis v. American Cas. Co. &c.*, 117 Ga. App. 297, 301 (2) (160 SE2d 449) (1968).

Friedman argues that her lawsuit was timely because it was filed on September 16, 2005, within one year of the date on which the mold contamination was confirmed. Her argument, however, is misguided. Because the Policy expressly excluded coverage for loss to real property caused by inadequate or defective design and/or maintenance, the crux of Friedman's argument is that she seeks recovery, not for the excluded HVAC system itself, but for the ensuing water damage and resulting mold.[3] And the record is clear that Friedman's house had endured water damage prior to September 6, 2005, the date on which Comfort Air reported "condensation on insulation causing ceiling damage." Indeed, Friedman was prompted to call Comfort Air because she herself had observed the damage sometime before that date.

---

[2] Because damage caused by mold was specifically excluded under the Policy, Friedman has consistently asserted that excessive moisture and water damage ensued from the defective and/or poorly maintained air conditioning unit and that the mold resulted from the water damage.

[3] Friedman's alternative argument under a separate Policy exclusion that the water damage and resulting mold ensued from an "inherent vice [or] latent defect" in the HVAC system does not change this result.

Friedman presents no evidence that would otherwise excuse her strict compliance with the contractual time limitation. Compare *Pilgrim Health and Life Ins. Co. v. Chism*, 49 Ga. App. 121, 122-123 (174 SE 212) (1934) (compliance with contractual provision requiring that suit be filed within one year of the insured's death impossible when the death of the insured was unknown until after the expiration of the time limitation). Because her failure to file suit within the Policy's limitation period precludes recovery, the trial court erred in denying Encompass's motion for summary judgment.[4] See *Thornton v. Ga. Farm Bureau Mut. Ins. Co.*, 297 Ga. App. 132 (676 SE2d 814) (2009); *McCoury v. Allstate Ins. Co.*, 254 Ga. App. 27 (1) (561 SE2d 169) (2002); *Suntrust Mtg. v. Ga. Farm Bureau Mut. Ins. Co.*, 203 Ga. App. 40, 41-42 (416 SE2d 322) (1992); *Beck v. Ga. Farm Bureau Mut. Ins. Co.*, 146 Ga. App. 878, 879 (247 SE2d 548) (1978).

2. We need not address Encompass's remaining enumerations of error in light of our holding in Division 1.

*Judgment reversed. Smith, P. J., and Phipps, J., concur.*

DECIDED JUNE 12, 2009 —
RECONSIDERATION DENIED JULY 29, 2009

*Webb, Zschunke, Neary & Dikeman, Carrie O. Lowe, Melissa C. Patton*, for appellant.

*Royal & Vaughan, Jeffrey S. Vaughan, Eugene C. Brooks IV*, for appellee.

---

[4] Friedman's argument that the one-year limitation was tolled by the Policy's language extending the one-year period by the number of days between the date the proof of loss is submitted and the date a claim is denied fails. There is no record evidence that Encompass requested or that Friedman provided proof of loss as provided under the Policy.