S09G1257. THORNTON v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY.
(695 SE2d 642)

NAHMIAS, Justice.

We granted certiorari in this case to decide whether the Court of Appeals erred in holding that the one-year time-to-sue clause in the parties' insurance policy was not tolled for at least 60 days after Lagrande Thornton submitted a proof of loss, which is the minimum period the policy gave to Georgia Farm Bureau Mutual Insurance

Company (GFB) to pay after receiving proof of loss. See *Thornton v. Georgia Farm Bureau Mut. Ins. Co.*, 297 Ga. App. 132 (676 SE2d 814) (2009). This is a case of straightforward contract interpretation, and we affirm.

Thornton, whose home was destroyed by fire on February 28, 2006, had a homeowner's insurance policy with GFB. A clause in the policy entitled "Suit Against Us" provides that "[n]o action can be brought unless the policy provisions have been complied with and the action is started one year after the date of the loss." Another clause entitled "Loss Payment" provides that "[l]oss will be payable 60 days after we receive your proof of loss and: a. reach an agreement with you; b. there is an entry of a final judgment; or c. there is a filing of an appraisal award."

GFB was notified of the fire the day it occurred. On March 2, 2006, GFB wrote to Thornton discussing his duties under the policy, including his duty to submit a proof of loss, and explaining that the "Suit Against Us" provision of the policy required that he bring an action within one year of the date of the loss. On March 10, 2006, Thornton submitted a proof of loss. On October 30, 2006, following an extensive investigation and many communications about the claim between Thornton and GFB, GFB notified Thornton that it was denying coverage under the policy based on its determination that Thornton was responsible for the fire and had misrepresented material facts. Thornton did not file suit against GFB until March 15, 2007, which was a year and 15 days after the date of the loss.

The trial court granted summary judgment to GFB because Thornton did not file suit within one year of his loss. On appeal, Thornton contended, among other things, that the one-year period of limitation should be tolled until the expiration of the 60-day period that GFB had to pay the claim. The Court of Appeals disagreed and affirmed the trial court's judgment. We then granted certiorari.

1. Thornton first contends that the Court of Appeals erred because his cause of action did not accrue until the end of the 60-day loss payment period, meaning that the contractual time-to-sue period did not begin to run until that date. He argues that, where a right of action depends upon the satisfaction of some condition, here, expiration of the 60-day period, a cause of action does not accrue and a statute of limitation does not begin to run until the condition is satisfied.

Thornton fails to recognize the distinction between a statute of limitation and its particular language and a contractual period of limitation and its particular language. They can be significantly different, as demonstrated by the fact that the statute of limitation for contract claims is six years, see OCGA § 9-3-24, but the courts have nevertheless enforced much shorter contractual periods of limitation,

including the one-year limitation in insurance policies like the one in this case. See, e.g., *Encompass Ins. Co. of America v. Friedman*, 299 Ga. App. 429, 431 (682 SE2d 694) (2009) (citing cases). The General Assembly has authorized the Insurance Commissioner to prescribe a standard fire insurance policy. See OCGA § 33-32-1 ("No policy of fire insurance covering property located in this state shall be made, issued, or delivered unless it conforms as to all provisions and the sequence of the standard or uniform form prescribed by the Commissioner. . . ."). Until requiring that the minimum contractual limitation period be extended to two years for policies issued after June 20, 2006 (which was after the policy in this case was issued), the Insurance Commissioner also approved of the one-year time-to-sue period. See Ga. Comp. R. & Regs. r. 120-2-19-.01 (setting forth the Insurance Commissioner's current standard fire policy); *Morrill v. Cotton States Mut. Ins. Co.*, 293 Ga. App. 259, 261-262 (666 SE2d 582) (2008) (explaining that the standard policy provided for a minimum one-year limitation period until the period was extended to two years effective June 20, 2006).

Thus, the length of the limitation period is very different in the standard fire insurance contract than in OCGA § 9-3-24. The language describing when the limitation period begins to run is also very different. OCGA § 9-3-24 provides that the limitation period begins to run "after the [claim] become[s] due and payable," whereas the limitation period in Thornton's policy begins to run "after the date of the loss." The trigger for the one-year limitation period that controls this case is clear: the date of the loss. Parties could agree, or the Insurance Commissioner could require, that the limitation period should start to run after the claim becomes due and payable, but that is not this case.

Indeed, Thornton's argument regarding when a contractual limitation period like the one in this case begins to run was rejected almost a century ago by the Court of Appeals. In *Maxwell Bros. v. Liverpool & London & Globe Ins. Co.*, 12 Ga. App. 127 (76 SE 1036) (1913), the fire insurance policy at issue contained two provisions similar to those at issue here. See id. at 129. The insureds filed suit over one year after the date of the fire but argued that the limitation period should be construed not to run until the end of the 60-day period granted to the insurer to evaluate the proof of loss. Like Thornton, the insureds in *Maxwell Bros.* argued that the

> period of limitation stipulated in the policy begins to run when the right of action for the loss accrues; that no right of action accrues either in law or equity until the claimant can legally sue; in other words, that a stipulation in an insurance policy that suit can be brought only "within twelve months next after the fire" means that the insured shall

have twelve months after the accrual of the right of action on the policy; and that where the policy stipulates that an action shall not be sustainable until after due compliance with conditions such as that the loss shall not be payable until sixty days after notice has been given of the fire, or until the loss has been ascertained and satisfactory proof furnished, the right of action accrues only after compliance with the conditions, and consequently the period of limitation as to suit begins to run only when these conditions have been fully complied with.

Id.

The Court of Appeals rejected that argument for the same reason we do, explaining that,

[i]f there were any ambiguity in the stipulation as to the period of limitation, we would undoubtedly adopt that construction . . . which would prevent a forfeiture, but where the language is explicit and unambiguous, the courts can only enforce the terms and conditions of the contract as expressed by the parties. If the question were under the general statute of limitations, it would be true that the limitation did not begin to run until the accrual of the right of action, but the contract expressly makes a period of limitation as distinguished from the statute of limitations, and the stipulation is not that the insured shall have twelve months from a compliance with any of the conditions relating to the furnishing of proof or notice, but is clear and distinct that "no suit or action on this policy . . . shall be sustainable in any court of law or equity . . . unless commenced within twelve months next after the fire." The cases cited by learned counsel for the plaintiffs in error, in support of his contention that the period of limitation does not begin to run until the accrual of the right of action, relate to the statutory period of limitation, and are not applicable to limitations made by the parties to the contract.

Id. at 129-130. Accord *Pennsylvania Millers Mutual Ins. Co. v. Thomas Milling Co.*, 137 Ga. App. 430, 431 (224 SE2d 55) (1976); *Walton v. American Mut. Fire Ins. Co.*, 109 Ga. App. 348, 348 (136 SE2d 168) (1964).

Thornton seeks to rely on cases construing statutes of limitation, but those cases, interpreting different language in a noncontractual context, are simply not on point. See *Burton v. Metropolitan Life Ins. Co.*, 48 Ga. App. 828, 828 (173 SE 922) (1934)

(construing a statute of limitation triggered by when the action became "due and payable"); *Sandy Springs Toyota v. Classic Cadillac Atlanta Corp.*, 269 Ga. App. 470, 471 (604 SE2d 303) (2004) (interpreting a statute of limitation triggered by when the cause of action accrued).

Thornton also argues that, under the rationale of *Thomas v. Hudson*, 190 Ga. 622 (10 SE2d 396) (1940), the limitation period did not begin to run until the end of the 60-day loss payment period. In *Thomas*, this Court held that, when a party agrees not to sue until a particular event occurs, the statute of limitation is suspended until the happening of that event. See id. at 631. *Thomas* is inapposite, however, because in this case there was no agreement by the insured not to sue until a particular date. For these reasons, we reject Thornton's contention that the time-to-sue period on his claim did not begin to run until the expiration of the 60-day loss payment period.

2. Thornton next contends that, if the one-year contractual limitation period began to run on the date of the loss, it should be tolled until the 60-day loss payment period ends, because such tolling should be the rule for all such cases.

(a) Thornton asserts that the limitation provision and the loss payment provision are in conflict, rendering the policy ambiguous. Thornton says that the limitation period gives the insured a full year to file suit, if his claim is not adjusted and paid to his satisfaction, but that the loss payment provision shortens that time period by two months. He then argues that the rule that an ambiguous insurance policy must be construed in favor of the insured requires that the policy be interpreted to toll the limitation period for at least those 60 days.

Thornton relies heavily on *Peloso v. Hartford Fire Ins. Co.*, 267 A2d 498 (N.J. 1970), and *Nicholson v. Nationwide Mutual Fire Ins. Co.*, 517 FSupp. 1046 (N.D. Ga. 1981). The insurance contract at issue in *Peloso* contained a one-year limitation period and a 60-day loss payment provision similar to the ones in this case. See 267 A2d at 499, 501. The New Jersey court stated that

> [t]he majority of courts, reasoning that the language of the limitation provision is clear and unambiguous, have held that the limitation period should be calculated from the date of the fire or other casualty insured against.
>
> A few courts, however, have held that the limitation period begins to run from the time the cause of action accrues. These courts have reasoned that the limitation provision must be read in conjunction with the provision requiring the insured to supply proof of loss . . . . In effect,

> these provisions afford the insurer immunity from suit for 60 days after the insured has filed his proof of loss.
>
> There obviously is an incongruity in the statute. While the limitation provision purports to give the insured a clear 12 months to institute suit, yet, by virtue of the other statutory provisions cited above, this period is greatly reduced. Nonetheless, we think that the central idea of the limitation provision was that an insured have 12 months to commence suit.

Id. at 500-501 (citations omitted). The court also stated that "unfairness" to the insured was demonstrated by the fact that it took the insurer longer than the 60-day time frame to investigate the claim and deny it. See id. at 501. Based on the "incongruity" and "unfairness" of the provisions, the court held that the "fair resolution" was to toll the running of the one-year limitation period "from the time an insured gives notice until liability is formally declined" — not merely until the end of the 60-day contractual loss payment period. See id.

*Nicholson* involved a fire insurance policy issued in Georgia that included the same limitation and proof of loss provisions that are at issue here. See 517 FSupp. at 1048-1049. Relying primarily on *Peloso* and a Michigan case that followed *Peloso* but has since been overruled, see *Tom Thomas Organization, Inc. v. Reliance Ins. Co.,* 242 NW2d 396, 398-400 (Mich. 1976), the *Nicholson* court reasoned that the delay caused by the loss payment provision meant that an insured did not have the full 12 months to file suit granted under the insurance contract, that the loss payment and limitation provisions were ambiguous, and that, under Georgia law, the ambiguity had to be resolved against the insurer. See *Nicholson,* 517 FSupp. at 1050-1051. The court further held that the policy could be construed to grant the insureds a year to file suit either from the date their claim was officially denied by the insurer or from the end of the 60-day period that the insurer had to evaluate the proof of loss. See id. at 1051-1052. Departing from *Peloso,* the court chose the latter date to begin the running of the limitation period. See *Nicholson,* 517 FSupp. at 1052. We note that, while Thornton states that tolling until liability is formally denied would be equitable, he only seeks tolling until the end of the 60-day loss payment period.

(b) We disagree with Thornton's assertion that the insurance policy in this case is ambiguous and with the rationale of *Peloso* and *Nicholson.* Although an ambiguous insurance contract must be construed in favor of the insured, a court may not strain to find an ambiguity and must enforce an unambiguous contract as written. See *State Farm Mut. Auto. Ins. Co. v. Staton,* 286 Ga. 23, 25 (685

SE2d 263) (2009). Here, as the Court of Appeals recognized long ago in *Maxwell Bros.*, 12 Ga. App. at 129-130, the policy provisions are not at all ambiguous or incongruous. The limitation period plainly requires the insured to file suit within one year of the loss, not one year from the end of the 60-day period that the company is given to investigate the proof of loss or any other date. The policy could easily have been drafted to provide that the insured's one year to file suit starts at the end of, or is tolled during, the 60-day period, but it was not.

Moreover, each provision has independent meaning and purpose. The insurance company is given at least 60 days to investigate the proof of loss, and the insured is given one year from the date of the loss to file suit. This point was recently emphasized by the Michigan Supreme Court, which had followed *Peloso* for many years, but recently changed course. See *Devillers v. Auto Club Ins. Assn.*, 702 NW2d 539, 543-552 (Mich. 2005). The Michigan court explained that it was unable to see any inconsistency between the two provisions, because the loss payment provision "announces that the insurer is liable 60 days after the proof of loss is filed by the insured — a period obviously intended to afford opportunity for notification of the loss by the insured and assessment by the insurer," whereas the "limitation provision provides that the insured has 12 months from the date of the loss to start suit." *Devillers*, 702 NW2d at 546 (citation omitted). The court concluded that its earlier cases approving of tolling, including the *Tom Thomas* case on which *Nicholson* relied, "found inconsistencies where none existed and, under this thin veil, inserted their own policy views into the otherwise contrary . . . language at issue." *Devillers*, 702 NW2d at 547. See also *Rory v. Continental Ins. Co.*, 703 NW2d 23, 31 (Mich. 2005) (formally overruling *Tom Thomas*).

In another persuasive opinion, the Eighth Circuit rejected *Peloso* and the reliance given to policy considerations over plain contractual language in it and other cases. In *FDIC v. Hartford Accident and Indemnity Co.*, 97 F3d 1148 (8th Cir. 1996), the district court had held that the 24-month limitation period in the bond at issue was tolled from the time the proof of loss was submitted until the time Hartford denied the claim. See id. at 1150.

> The district court reasoned that literally enforcing the twenty-four month limitations period as written, would "produce unjust results and is contrary to the policyholder's rights under the bond." The court noted that "despite the twenty-four month limitations period, the plaintiff in fact had only eight months in which to bring an action. Add to this the two months of immunity provided by the bond and

it is clear that the policyholder's time for bringing suit was severely reduced." The court concluded that adoption of the tolling theory "is clearly the most fair to both parties."

Id. at 1150.

The Eighth Circuit reversed. The court

decline[d] to rewrite the policy's limitations provision to read other than its clear and unambiguous terms provide, namely that suit may not be brought "after the expiration of 24 months from the discovery of such loss." A court must not impose its own concept of fairness under the guise of construing a contract. Where the parties make by agreement a fixed, unqualified limitation that no suit or action on the policy shall be sustainable unless commenced within twenty-four months after discovery of the loss, the parties are bound to their contract as written.

Id. at 1151 (citation omitted). The court also noted that

[i]f conduct or inaction on the part of the insurer is responsible for the insured's failure to comply with time limitations, injustice is avoided and adequate relief assured, without doing violence to the plain language of the insurance contract, by resort to traditional principles of waiver and estoppel.

Id.

The recent Michigan decisions and *Hartford Accident* accord with the way Georgia courts interpret contracts, including insurance policies. The unambiguous provisions of the policy are enforced, without the court pondering whether the provisions are "fair" or "good policy." See, e.g., *Payne v. Twiggs County School Dist.*, 269 Ga. 361, 363 (496 SE2d 690) (1998) (holding that the unambiguous terms in an insurance policy "will be given full effect, regardless of whether they might be of benefit to the insurer, or be of detriment to an insured").

Perhaps because there is no real ambiguity in the two provisions at issue, our Court of Appeals has repeatedly rejected the rationale of *Peloso*, albeit with no significant discussion. See *Cambridge Mut. Fire Ins. Co. v. Okonkwo*, 218 Ga. App. 59, 61, n. 1 (460 SE2d 302) (1995); *Suntrust Mtg. v. Ga. Farm Bureau Mut. Ins. Co.*, 203 Ga. App. 40, 42 (416 SE2d 322) (1992); *Universal Scientific, Inc. v. Safeco Ins. Co.*, 174 Ga. App. 768, 772 (331 SE2d 611) (1985). Indeed, our view accords with the majority of courts, as *Peloso* described its

tolling doctrine as the minority position, see 267 A2d at 500-501, and it appears that it still is. See *Hartford Accident*, 97 F3d at 1150 (citing *Peloso* as representative of "a minority of courts that have used the concept of tolling to enlarge a contractual time limitations"). Furthermore, another district judge on the same federal court that decided *Nicholson* later declined to follow that decision, concluding that it was inconsistent with the reasoning of Georgia cases such as *Pennsylvania Millers*, 137 Ga. App. at 431, and *Maxwell Bros.*, 12 Ga. App. at 129-130. See *Broadfoot v. Reliance Ins. Co.*, 601 FSupp. 87, 88-89 (N.D. Ga. 1984).

We also note that the policy interests relied on by *Peloso* and other courts, as well as those asserted by Thornton, are not as one-sided as they are presented to be. For example, Thornton says that it will typically take many months for an insurer to investigate a fire insurance claim and that, in some cases, it could take over a year. Thornton therefore asserts that a policy holder is left with a Hobson's choice. He can file a lawsuit before the insurer has formally denied the claim and have it dismissed as premature, or he can continue to allow the insurer to investigate despite the one-year limitation provision and risk dismissal, which Thornton alleges will entice the insurer to delay a decision on the loss and possibly avoid coverage.

But, in fact, Thornton did not have to wait to file suit until GFB denied his claim; he just had to wait at least 60 days. (The policy also required Thornton to comply with other applicable policy provisions, which he admits occurred on July 12, 2006, when he completed his examination under oath.) Moreover, despite being under a one-year limitation period, Thornton had ample time — four months — to file suit after the October 30, 2006, denial of his claim. We note that Thornton has offered no good explanation for why he missed the deadline by two weeks. Thus, as this case illustrates, the insured will typically be able to file suit well within the contractual period of limitation even if the insurance company has not formally denied the claim. The fact that unusual circumstances may require *some* insureds to file protective suits before the contractual limitation provision expires is no reason to read a tolling provision into *every* insurance contract.

In addition, the tolling approach creates its own problems. For example, if the insured submits a clearly defective proof of loss that is properly rejected by the insurer, would that toll the limitation period, and, if so, would it toll it only for the 60 days from the date the defective proof of loss was submitted or would it continue to toll it until a proper proof of loss was submitted and for 60 days thereafter. Indeed, the courts in *Peloso* and *Nicholson* could not even agree on how long the tolling would be. As discussed above, *Peloso*

adopted the date of denial of the insurance claim as the appropriate date from which the limitation period should run. See 267 A2d at 501. *Nicholson* acknowledged that possibility, but adopted the end of the 60-day loss payment period as the appropriate date. See 517 FSupp. at 1052. Other tolling periods might also be possible. If a policy requires, as does Thornton's, that an insured comply with all applicable policy provisions before filing suit, such as submitting to an examination under oath and providing an inventory, should the policy also be tolled during the time the insured is complying with those provisions?

These issues illustrate that if the unambiguous terms of the parties' contract are not enforced as written, the courts will be left making policy calls that are properly left to individual parties drafting their contracts and to the General Assembly and the Insurance Commissioner in establishing the standard policy. See OCGA § 33-32-1. In this regard, we again note that the Insurance Commissioner has decreed that, as of June 20, 2006, the standard fire insurance policy must give an insured two years from the date of the loss to file suit, thereby doubling the time that Thornton had under his older policy. This extension should, except in the most problematic cases, permit an insurer to complete its investigation and deny or grant a claim in ample time for an insured to file suit.

Finally, as recognized by the Eighth Circuit in *Hartford Accident*, true injustices may be addressed under well-established doctrines in individual cases, without warping the provisions of every insurance contract. For example, an insurer's conduct under certain circumstances may constitute a waiver of its right to enforce the contractual limitation period. See *Morrill*, 293 Ga. App. at 259 ("[A]n insurer can be held to have waived a limitation period when its investigations, negotiations, or assurances up to and past the period of limitation led the insured to believe the limitation would not apply. . . . It is only where the insurer's conduct reasonably leads the insured to believe that a strict compliance with the limitation provision would not be insisted upon.") (quoting *Appleby v. Merastar Ins. Co.*, 223 Ga. App. 463, 464 (477 SE2d 887) (1996)); *Auto-Owners Ins. Co. v. Ogden*, 275 Ga. 565, 567 (569 SE2d 833) (2002) (explaining that, if an insurer never denies liability and, in negotiating for settlement, leads an insured to believe that he will be paid without suit, the insurer may be held to have waived the applicable limitation period).

For these reasons, we find no ambiguity in Thornton's insurance policy and decline to follow *Peloso* and *Nicholson*.

3. Thornton's final argument is that tolling is justified by analogy to Court of Appeals cases holding that, when an insurer and an insured agree to an appraisal to determine the amount of a loss,

the limitation period is tolled during the time it takes to complete the appraisal. See, e.g., *Southern Gen. Ins. Co. v. Kent*, 187 Ga. App. 496, 499 (370 SE2d 663) (1988); *Nat. Union Fire Ins. Co. v. Ozburn*, 57 Ga. App. 90, 92 (194 SE 756) (1937). The appraisal cases appear to be based on the rationale that the time for filing suit should be tolled because *both* parties have *agreed* to proceed with an appraisal that will bind them as to the amount of the loss if they proceed to trial on liability (or if they settle). See *Southern Gen. Ins. Co.*, 187 Ga. App. at 498. "The appraisal clause determines amount of loss. A suit on the policy is necessary to determine liability. The appraisal process is not merely a prerequisite to filing suit, but the method by which the parties have contractually agreed to settle their differences with regard to the amount of loss." Id. (citations omitted). Thus, in appraisal cases, a trial cannot proceed until the appraisal process is complete. See id.; *Ozburn*, 57 Ga. App. at 94. Here, by contrast, the trial could proceed on both liability and the amount of the loss if a timely lawsuit is filed and the insurer does not act promptly on the insured's proof of loss.

4. For these reasons, we hold that the limitation provision in Thornton's insurance policy is clear and unambiguous, that it provided Thornton one year from the date of the fire to file suit, that it was not tolled during the 60-day loss payment period, that he did not file suit on time, and that his suit was therefore properly dismissed.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 28, 2010.

*Roy E. Barnes, John R. Bevis*, for appellant.

*Swift, Currie, McGhee & Hiers, Mark T. Dietrichs, William W. Downs, James, Bates, Pope & Spivey, Duke R. Groover, Jeanna G. Fennell*, for appellee.