*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1888**

Lions Park Apartments, LLC,
Appellant,

vs.

Midwest Family Mutual Insurance Company,
Respondent.

**Filed August 10, 2015
Affirmed
Kirk, Judge**

Anoka County District Court
File No. 02-CV-13-6692

Frederick M. Young, Gries Lenhardt Michenfelder Allen, P.L.L.P., St. Michael, Minnesota (for appellant)

Michael J. Tomsche, Erica A. Weber, Tomsche, Sonnesyn & Tomsche, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Chutich, Presiding Judge; Connolly, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

**KIRK**, Judge

Appellant challenges the district court's grant of summary judgment to respondent insurer, arguing that its claims were not untimely. Because appellant failed to bring the

lawsuit within two years of the loss, as required by the insurance policy and Minnesota statute, we affirm.

## FACTS

On September 20, 2008, an apartment complex owned by appellant Lions Park Apartments, LLC (Lions Park) in Elk River was destroyed by a fire. Immediately after the fire, the natural gas supply serving the apartment complex was disconnected and capped by a third party.

Lions Park was insured for fire loss by respondent Midwest Family Mutual Insurance Company (Midwest Family). Immediately after the fire, Lions Park submitted a claim to Midwest Family requesting coverage for the loss. Two days after the fire, Midwest Family sent Lions Park a letter confirming its acceptance of the claim and detailing the relevant provisions of Lions Park's first-party property coverage. The letter reiterated the two-year limitation clause for commencing a legal action against Midwest Family as follows:

> No one may bring a legal action against us under this insurance unless:
>
> a.     There has been full compliance with all of the terms of this insurance; and
>
> b.     The action is brought within [two years] after the date on which the direct physical loss or damage occurred.

The insurance policy's two-year suit-limitation clause is in accordance with the Minnesota standard fire insurance policy, which sets forth a number of mandatory provisions for fire-insurance policies issued for Minnesota property, including the

2

provision that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy have been complied with, and unless commenced within two years after inception of the loss." *See* Minn. Stat. § 65A.01, subd. 3 (2014).

Midwest Family made a series of payments to Lions Park under the provisions of the policy, up to the coverage limit. The last payment to Lions Park, for business income loss and/or extra expenses relating to the fire loss, was issued on September 30, 2009, approximately one year after the fire.

During the restoration period, natural gas was used to heat the uninsulated construction site as the apartment complex was reconstructed. It is unclear from the record who restored natural gas to the property. On September 15, 2009, the restoration period concluded as a certificate of occupancy was issued for the apartment complex.

By letter dated February 15, 2012, CenterPoint Energy informed Lions Park that Lions Park had incurred a past-due gas bill totaling $49,259.86 from November 14, 2008, through May 5, 2009. In December 2012, Lions Park notified Midwest Family of the delinquent gas bill by sending a copy of the summons and complaint where it was a named defendant in an action commenced by CenterPoint Energy, which was seeking a money judgment of $48,502.68. Lions Park requested that Midwest Family pay the delinquent bill and both indemnify and cover any costs arising from the defense of the lawsuit. In a letter dated January 15, 2013, Midwest Family formally denied Lions Park's request for coverage for its defense and indemnity of the lawsuit. Lions Park entered into a settlement agreement with CenterPoint Energy to pay $48,502.68.

3

On September 19, 2013, Lions Park commenced suit against Midwest Family on the grounds of breach of contract and estoppel and requested a declaratory judgment ordering Midwest Family to pay the gas bill under the language of the insurance policy. Lions Park moved for summary judgment on its breach of contract claim. Midwest Family also moved for summary judgment, arguing that Lions Park's lawsuit was untimely under the insurance policy's two-year suit-limitation clause.

On June 18, 2014, the district court heard the parties' cross motions for summary judgment. The district court granted Midwest Family's motion for summary judgment, concluding that the insurance policy's suit-limitation period was unambiguous and that there was no legal basis for equitable estoppel or tolling of the limitation period.

Lions Park appeals.

**D E C I S I O N**

On appeal from summary judgment, this court reviews whether there are any genuine issues of material fact and if the district court erred in its application of the law. *STAR Centers, Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002) (citations omitted). We view the evidence in the light most favorable to the party against whom summary judgment was granted, and review de novo whether a genuine issue of material fact exists. *Id.* at 76-77. We also review de novo whether the district court erred in its application of the law. *Id.* at 77. "Once the moving party has made a prima facie case that entitles it to summary judgment, the burden shifts to the nonmoving party to produce specific facts that raise a genuine issue for trial." *Bebo v. Delander*, 632 N.W.2d 732, 737 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001).

4

Interpretation of an insurance policy and statutory language are questions of law, which this court reviews de novo. *Johnson v. Mut. Serv. Cas. Ins. Co.*, 732 N.W.2d 340, 343-44 (Minn. App. 2007), *review denied* (Minn. Aug. 21, 2007). An insurance policy containing clear and unambiguous language must be given its usual and accepted meaning. *Wanzek Constr., Inc. v. Emp'rs Ins. of Wausau*, 679 N.W.2d 322, 324 (Minn. 2004). If the language of an insurance contract is unambiguous, this court will not "render a construction which is more favorable to finding coverage[,] but will apply the phrase to the facts of the case in order to give effect to the plain meaning of the language." *Fireman's Ins. Co. of Newark, N.J. v. Viktora*, 318 N.W.2d 704, 706 (Minn. 1982).

Lions Park argues that the two-year suit-limitation language of Minn. Stat. § 65A.01, subd. 3, begins to run on the date that the insurer denies coverage and relies heavily on foreign caselaw that neither persuades nor binds this court. *See Mahowald v. Minn. Gas Co.*, 344 N.W.2d 856, 861 (Minn. 1984) (stating foreign caselaw is not binding on Minnesota courts). "When an insurance clause requires *suit* to be brought within a certain period, failure to bring *suit* within that period bars suit if the limitation clause does not conflict with a specific statute and is not unreasonable in length." *L&H Transp., Inc. v. Drew Agency, Inc.*, 403 N.W.2d 223, 226 (Minn. 1987). Appellate courts have generally found a two-year suit-limitation clause to be reasonable. *See, e.g.*, *F.D.I.C. v. Hartford Accident & Indem. Co.*, 97 F.3d 1148, 1151 (8th Cir. 1996) (enforcing two-year suit-limitation clause under South Dakota law after discovery of loss concerning standard savings and loan blanket bond covering employee infidelity); *Minn.*

5

*Mut. Fire & Cas. Co. v. N. Lakes Constr., Inc.*, 400 N.W.2d 367, 370 (Minn. App. 1987) (holding two-year suit-limitation clause on policy insuring property against fire and other losses was reasonable when insured filed claim for water damage). The two-year suit-limitation clause is in accord with Minnesota statute. Minn. Stat. § 65A.01, subd. 3. Moreover, the limitations period is not ambiguous on its face. Lions Park's insurance policy clearly bars legal action "[two] years after the date on which direct physical loss or damage occurred."

Neither party disputes that: (1) the language of the insurance policy states that Lions Park is subject to the suit-limitation period; (2) Midwest Family informed Lions Park of the limitations period two days after the fire; (3) the date of Lions Park's loss was September 20, 2008; (4) Midwest Family immediately accepted Lions Park's claim and made a timely series of payments for property damage, business income loss, and other expenses under the insurance policy ultimately totaling over six-million dollars; and (5) Lions Park's complaint is dated September 18, 2013. Hence, the record supports the district court's determination that Lions Park's lawsuit over the delinquent gas bill was untimely.

Lions Park next advances a series of arguments attacking the enforceability of the suit-limitation period, which we conclude are all without merit. Lions Park argues that Minnesota, along with foreign jurisdictions, has allowed equitable tolling of the suit-limitation period until the insurer denies the insured claim. In particular, Lions Park cites *Entzion v. Illinois Farmers Ins. Co.*, 675 N.W.2d 925, 929 (Minn. App. 2004), a case involving an insured motorist seeking recovery of no-fault benefits under her automobile

6

insurance policy where neither the No-Fault Act nor the insurance policy expressly prescribed a suit-limitation period. *Id.* We held, under these circumstances, an action for breach of contract in a no-fault benefits case accrues "once the insurer has denied benefits." *Id.* But the factual scenario presented in the instant case is inapposite to *Entzion* because the suit-limitation period is clearly governed by statute and adopted by the insurance contract.

Lions Park relies on the delayed discovery rule as announced in *O'Reilly v. Allstate Ins. Co.*, 474 N.W.2d 221, 223 (Minn. App. 1991), to argue that its limitation period did not begin until it became aware of the gas bill in February 2012. Under this rule, the suit-limitation period begins to run "after appreciable damage occurs and is or should be known to the insured." *O'Reilly*, 474 N.W.2d at 223. Lions Park's reliance on *O'Reilly* is misplaced. In *O'Reilly*, an insurer denied a homeowner's initial claim of property damage to her home arising from storm damage in 1983, and five years later denied the homeowner's second claim regarding significant foundation problems caused by the storm. *Id.* at 223-24. We remanded for a factual determination of when appreciable insured damage occurred. *Id.* at 223. But here, the date of loss was the date of the fire, and we decline to extend the delayed discovery rule under this factual scenario. Moreover, the expense that Lions Park incurred from using natural gas to heat an uninsulated construction site is simply not analogous to progressive and latent property damage to a house as described in *O'Reilly*.

Lions Park's argument that the suit-limitation period is a contract of adhesion is similarly without merit. Lions Park points to the district court's statement that the parties

7

acknowledged that the delayed notice of the gas bill made it difficult to comply with the suit-limitation period. "A contract of adhesion is one drafted unilaterally by the business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere." *Vierkant by Johnson v. AMCO Ins. Co.*, 543 N.W.2d 117, 120 (Minn. App. 1996) (quotation omitted), *review denied* (Minn. Mar. 28, 1996). "Insurance contracts are contracts of adhesion between parties not equally situated." *Id.*

Here, the insurance policy adopted the statutory limitations period, which was required by law. As the district court pointed out in its memorandum, the apartment complex was fully restored one year after the fire, leaving an additional year for Lions Park to exercise due diligence in ensuring that it had been paid by Midwest Family for all outstanding claims. Moreover, it was Lions Park's responsibility to identify and forward all claims to Midwest Family.

Lions Park also argues that Midwest Family is equitably estopped from relying on the suit-limitation clause of the insurance policy because genuine issues of material fact exist regarding Midwest Family's knowledge of the gas bill and its implicit promise to pay it. In support of its position, Lions Park points to an internal memo between Midwest Family insurance agents dated October 28, 2008, where an agent wrote that she met with a contractor hired to rebuild the apartment complex and provided a cost estimate for providing temporary heating. An insurer's conduct can estop the assertion of a time limitation contained in an insurance policy if the facts show that it would be "unjust, inequitable, or unconscionable to allow the defense to be interposed." *L&H Transp.*, 403

8

N.W.2d at 227. Although estoppel is ordinarily a question for the jury, "when only one inference can be drawn from the facts," it is a question of law. *Id.* To invoke the doctrine of equitable estoppel, Lions Park must establish that (1) promises or inducements were made, (2) it reasonably relied on the promises, and (3) it will be harmed if estoppel is not applied. *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 919 (Minn. 1990).

Viewing the evidence in the light most favorable to Lions Park, there is no evidence in the memo, or the remainder of the record, that Midwest Family promised Lions Park that it would pay the cost estimate, and Midwest Family never received a gas bill from Lions Park, even though it accepted Lions Park's claim for fire-loss and promptly paid all other bills that were submitted. Lions Park also relies on *Avon State Bank v. BancInsure, Inc.*, Civ. No. 12-2557, 2014 WL 1048503 (D. Minn. Mar. 18, 2014), an unpublished federal opinion from the District of Minnesota, to argue that Midwest Family is equitably estopped from relying on a suit-limitation defense. "[F]ederal court interpretations of state law are not binding on state courts." *State ex rel. Hatch v. Emp'rs Ins. of Wausau*, 644 N.W.2d 820, 828 (Minn. App. 2002), *review denied* (Minn. Aug. 6, 2002). Here, we find the reasoning of *Avon* to be inapplicable because it involved an insurer who was estopped from denying coverage to the insured based on a suit-limitation provision for a claim after the insurer had defended the insured in the underlying suit. 2014 WL 1048503 at *8. But Midwest Family never defended Lions Park in its lawsuit with CenterPoint Energy concerning the delinquency of the gas bill. The record supports the district court's determination that there are no genuine issues of

material fact concerning whether Midwest Family should be estopped from relying on the two-year suit-limitation defense.

Finally, Lions Park argues that Midwest Family did not act in good faith when it declined to pay the gas bill. To establish a violation of the covenant of good faith and fair dealing, which is implied in every contract, a party must establish bad faith by demonstrating that the adverse party has an ulterior motive for its refusal to perform a contractual duty. *See Sterling Capital Advisors, Inc. v. Herzog*, 575 N.W.2d 121, 125 (Minn. App. 1998). The covenant ensures that one party does not unfairly prevent a condition from occurring or make it impossible for the other side to perform. *See In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995). Here, Lions Park provides no evidence showing that Midwest Family had an ulterior motive for refusing to pay the gas bill or acted in bad faith in declining to pay the bill.

**Affirmed**.